F I L E D
United States Court of Appeals
Tenth Circuit

MAY 3 2005

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

In re: JOYCE B. LUNA, VERNIE S.
LUNA, Debtors.

DANIEL NAVARRE, JOHN
HUNTER, HARVEY SWIFT,
WILLIAM H. NOBLE, JERRY
WILSON, ROBERT TROQUILLE,
PHIL DOZIER, RICHARD MAPLES,
RONNIE PRUDHOMME, HOUSTON
LEE, DONALD DENESE, LARRY
SAVELL, as Trustees of the Iron
Workers' Mid-South Pension Fund;
IRON WORKERS' MID-SOUTH
PENSION FUND,

            Appellants,

and

JOHN HUNTER, HARVEY SWIFT,
WILLIAM H. NOBLE, A. J.
MORRISON, TOM LAMBERT, IVAN
B. WILLIAMS, as Trustees of the
Mid-South Iron Workers' Welfare
Plan; THE MID-SOUTH IRON
WORKERS' WELFARE PLAN;
WILLIAM H. NOBLE, JOHN
HUNTER, HARVEY SWIFT,
ALFRED DEAN, TOM LAMBERT,
IVAN B. WILLIAMS, as Trustees of
the Oklahoma Iron Workers' Direct
Contribution Plan and Trust;
OKLAHOMA IRON WORKERS'

DIRECT CONTRIBUTION PLAN
AND TRUST; THE OKLAHOMA
IRON WORKERS;
APPRENTICESHIP AND TRAINING
FUND LOCAL 584,

      Plaintiffs,

      v.

MARK LUNA; JOYCE B. LUNA,

      Appellees.

No. 03-7060

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. CV-02-340-S)**

---

Kelly F. Monaghan, Holloway & Monaghan, Tulsa, Oklahoma, for Appellants.

Weldon W. Stout, Wright, Stout, Fite & Wilburn, Muskogee, Oklahoma, for Appellees.

---

Before **LUCERO** , **McCONNELL** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

---

      The question in this case is whether the Earned Retirement Income Security

Act of 1974 (ERISA) makes an employer a fiduciary to its employees if it agrees

to make regular employer contributions to an ERISA-covered employee-benefit

plan.  The Plaintiff-Appellants (Trustees) are trustees of various employee-benefit funds (Funds) who sued the Defendant-Appellees (the Lunas) to recover promised but unpaid monthly employer contributions to the Funds.  The payments were owed pursuant to a collective bargaining agreement to which the Lunas' company was a party.

The Trustees argue that the Lunas breached their fiduciary duties to the Funds under ERISA, and that therefore the unpaid contributions cannot be discharged in bankruptcy.  Finding that the Lunas were not ERISA fiduciaries, we AFFIRM the district court's ruling that the debt is dischargeable in bankruptcy.

## I. Background

Luna Steel Erectors, Inc. was an Oklahoma construction company that employed workers represented by Local 584 of the International Association of Bridge, Structural & Ornamental Iron Workers, AFL-CIO.  The Lunas, whose family had been ironworkers for generations, each owned 50% of Luna Steel's stock, and Joyce Luna served as its President, Secretary, and record-keeper.  Her son, Mark Luna, acted as Vice President.

The Trustees administer a number of multi-employer employee-benefit plans pursuant to a collective bargaining agreement (CBA) between various local unions, including Local 584, and various local employers and employer groups.  In 1997, Joyce Luna signed the CBA as an owner of Luna Steel, and thereafter

employed workers represented by Local 584. According to the CBA, Luna Steel agreed to submit monthly employer contributions to the Funds for the benefit of its Local 584-affiliated employees. Employer contributions under the CBA were "fringe benefits," and at no point did the Lunas withhold any portion of their employees' wages.

In March 1999, the financial condition of Luna Steel considerably worsened, and from March until December it failed to make the requisite contributions to the Funds. In an August 1999 letter to the Trustees, Joyce Luna acknowledged the outstanding contributions and expressed Luna Steel's intention to meet its obligations. In the meantime, Luna Steel continued to make payments for salaries and other business or personal expenses.[1] Conditions became so desperate during this period that Joyce Luna turned over for Luna Steel's benefit approximately $43,000 from her IRA and $7,000 in savings bonds, none of which Luna Steel ever repaid. Mark Luna also borrowed $30,000 in his own name from a local bank and deposited it in Luna Steel's account. Finally, in December Luna Steel's directors agreed to dissolve the corporation, which ceased operations on

---

[1] The bankruptcy court's factual findings indicate that the Lunas used company funds to pay for equipment leases, employee wages, insurance, and truck expenses. Furthermore, because Mark Luna did not receive a salary during periods of financial difficulty, cash debits and payments were made by the company for his personal expenses. Payments for personal expenses were also made to Joyce Luna, who also never received a salary.

December 31, 1999. As of a March 2000 audit, over $121,000 was owing to the Funds. Joyce and Mark Luna both filed voluntary Chapter 7 bankruptcy petitions on August 1, 2000.

In November 2000, the Trustees brought an action in United States Bankruptcy Court seeking a determination that the Lunas were personally responsible for the unpaid contributions. The Trustees alleged the debt was nondischargeable under 11 U.S.C. § 523(a)(4) since the Lunas had committed "fraud or defalcation" while acting in a fiduciary capacity. The Trustees based this argument on the fact that the Lunas continued to take some income and personal expenses at a time when they should have been making contributions to the Funds. To prevail on this claim, the Trustees had to establish that the Lunas acted as fiduciaries under § 523(a)(4) of the Bankruptcy Code. *Antlers Roof-Tuss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (B.A.P. 10th Cir. 1997). In an attempt to do so, the Trustees argued the Lunas were fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), which states, in part, that a fiduciary is one who "exercises any authority or control respecting management or disposition of [plan] assets."[2]

---

[2] We have previously held that "an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)." *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371–72 (B.A.P. 10th Cir. 1996). There is also authority that ERISA creates a fiduciary duty sufficient to impose a technical
(continued...)

The bankruptcy court held that while ERISA imposes fiduciary obligations under § 523(a)(4) of the Bankruptcy Code, because unpaid contributions do not constitute "plan assets," the Lunas had committed no defalcation and the debt could be discharged in bankruptcy. The Trustees appealed to United States District Court, which agreed with the reasoning of the bankruptcy court. The Trustees then brought this appeal.

## II. Discussion

To establish ERISA fiduciary status within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), the Trustees had to show (1) that the unpaid contributions were plan assets, and (2) that the Lunas exercised authority and control over the management or disposition of these assets. The district court's holding addressed only the first issue, finding that unpaid contributions "do not become plan assets until they have been paid into the particular funds." Having concluded that unpaid contributions were not plan assets, the district court did not need to decide whether the Lunas exercised fiduciary-like authority or control.

---

[2](...continued)
trust for purposes of the Bankruptcy Code. *See, e.g., Eavenson v. Ramey (In re Eavenson)*, 243 B.R. 160, 166 (Bankr. N.D. Ga. 1999). Thus, under the Trustees' theory, establishing ERISA fiduciary status also satisfies the fiduciary requirement under § 523(a)(4). Given our ultimate disposition of this case, we express no opinion regarding whether fiduciary status under ERISA satisfies § 523(a)(4) of the Bankruptcy Code.

As explained below, although we disagree with the district court's conclusion that contributions are not plan assets, we nevertheless affirm the lower court's order because, in our view, the Lunas did not exercise authority or control respecting the management or disposition of a plan asset.

**A. The Contractual Right to Unpaid Contributions is an "Asset" Under ERISA**

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), states, in part, that a person may become a fiduciary to an ERISA plan to the extent they "exercise[] any authority or control respecting management or disposition of its *assets*." (emphasis added). Whether unpaid contributions are "assets" of an ERISA plan is a matter of first impression in this circuit, one that we review de novo. *United States v. Telluride Co.*, 146 F.3d 1241, 1244 (10th Cir. 1998) (interpretation of federal statutes is a legal question reviewed de novo). As discussed below, we hold that the contractual right to collect the unpaid contributions is a plan asset.

The Trustees argue that "unpaid contributions become plan assets at the time they become due and owing." Aplt. Br. at 10. The Lunas, by contrast, argue that "contributions owed to the Pension Fund did not become plan assets until they [are] paid to it." Aple. Br. at 12. The Lunas do not dispute that they had an obligation under the CBA to make monthly contributions; they argue only that this obligation was contractual in nature rather than fiduciary, much like any other account payable or financial obligation of the company. As their brief puts it, "the

-7-

contractual obligation[] owed by Luna Steel, Inc. to Appellants/Funds is simply a contractual obligation . . . ." *Id.* at 17. The district court accepted this argument and held that the unpaid contributions do not amount to plan assets.

ERISA itself does not define what constitutes an "asset" of an ERISA fund.[3] Therefore, as in any case of statutory construction, we begin our analysis by looking to the plain meaning of the words used by Congress. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438 (1999) (in ERISA context, noting that "our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well") (citations and quotation omitted); *Gardner v. Chrysler Corp.*, 89 F.3d 729, 736 (10th Cir. 1996) (applying plain meaning rule). We presume Congress intended for the courts to apply the plain language of the statute unless such interpretation would lead to an absurd result. *Resolution Trust Corp. v. Westgate Partners, Ltd.,* 937 F.2d 526, 529 (10th Cir. 1991).

An "asset" is defined as "**1**. An item that is owned and has value. **2**. The entries on a balance sheet showing the items of property owned, including cash, inventory, equipment, real estate, accounts receivable, and goodwill. **3**. All the

---

[3] Although there is no statutory guidance, a Department of Labor regulation defines "plan assets" to include "amounts that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan . . . ." 29 C.F.R. § 2510.3-102. This definition, however, is not applicable here as it addresses *employee* contributions, not *employer* contributions.

property of a person available for paying debts." BLACK'S LAW DICTIONARY 112 (7th ed. 1999). Central to the definition of "asset," then, is that the person or entity holding the asset has an ownership interest in a given thing, whether tangible or intangible. In determining ownership interests, the obvious starting point is the common law of property. *Cf. Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) (relying on common law definition of "employee" because ERISA does not helpfully define that term). Indeed, the Department of Labor has instructed that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest." Department of Labor Advisory Opinion No. 93-14A (May 5, 1993), 1993 WL 188473, at *4.

Under ordinary notions of property rights, an ERISA plan does not have a *present interest* in the unpaid contributions until they are actually paid to the plan. In other words, the plan cannot use, devise, assign, transfer, or otherwise act upon contributions that it has not yet received. This does not mean, however, that the plan has no property interest in the unpaid contributions. It does. Pursuant to ordinary notions of property rights, the plan holds a *future interest* in the collection of the contractually-owed contributions. A future interest in property is "an interest . . . which is not, but may become a present interest." RESTATEMENT

(FIRST) PROPERTY § 153(1)(a) (1936). A chose in action, for example, is a future interest, and, like all property interests, it is transferrable.[4] *See id.* § 163 cmt. b. Applying these principles here, although the plan does not possess the unpaid contributions themselves, it does possess the *contractual right* to collect them.[5]

At least one court has followed a similar line of reasoning and held that the contractual obligation to make contributions to a plan is an "asset" under ERISA. In *United States v. LaBarbara*, 129 F.3d 81 (2d Cir. 1997), the defendant was convicted under 18 U.S.C. § 664 of aiding and abetting theft or embezzlement from an employee-benefit plan. As in our case, the employer in *LaBarbara* had entered into a collective bargaining agreement whereby he agreed to make regular contributions to an employee benefit plan. *Id.* at 83. The employer, however, fraudulently diverted plan contributions for other uses and then paid large sums of money to the defendant, a principal officer of the union that had negotiated the collective bargaining agreement. *Id.*

On appeal, the defendant argued his conviction was invalid. According to the defendant, the unpaid contributions were not "fund assets" because "moneys

---

[4] A chose in action is defined in part as "the right to bring an action to recover a debt, money, or thing." BLACK'S LAW DICTIONARY 234 (7th ed. 1999).

[5] The Restatement of Trusts supports this conclusion. It notes, for example, that "trust property" usually denotes interests in things, not the things themselves. RESTATEMENT (THIRD) OF TRUSTS § 2 cmt. c (2001). Thus, trust property "may consist of such diverse rights and undivided interests, terms of years, contingent future interests, and choses in action . . . ." *Id.* § 40 cmt. b.

owed to an ERISA plan are not assets until banked." *Id.* at 88. The Second Circuit, relying on a "common definition" of what constitutes an asset, disagreed. The court held that "[o]nce wages were paid to Local 66 members, [the employer] had contractual obligations to the Funds that constituted 'assets' of the Funds by any common definition. Certainly, an audit of the Funds would have to include such fixed obligations as assets." *Id.*

We agree with the reasoning and outcome in *LaBarbara*. The plain meaning of the term "asset" includes a chose in action to collect contractually-owed contributions. Certainly, as noted by the Second Circuit, an audit of the Funds would treat such fixed obligations as assets. *Id.* We therefore hold the district court erred in concluding that the contributions owed by the Lunas to the Funds were not plan assets under ERISA. Under ordinary notions of property rights, although the plan did not own the contributions themselves, it did own a contractual right to collect them.

In reaching this conclusion, we are mindful that some courts look to the language of the operative documents in deciding whether unpaid contributions amount to plan assets. *See, e.g., ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013–14 (11th Cir. 2003) ("The proper rule . . . is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.") (citations omitted).

Indeed, that is the method followed by the bankruptcy court and district court in this case.[6] In our view, however, the CBA and other trust documents in this case are at best ambiguous regarding the point when unpaid contributions become plan assets. More importantly, although we agree that in some cases reference to the plan documents will aid in the determination of what constitutes a plan asset, a court's purpose in cases such as this is to construe ERISA and give effect to its plain meaning. Having done so, we conclude that the contractual right to the unpaid contributions is an "asset" under ERISA.

**B. The Lunas are Not "Fiduciaries" Under ERISA § 3(21)(A)**

We turn next to consider whether the Lunas acted as fiduciaries with respect to a plan asset. Based on our de novo review, we conclude the Lunas were not fiduciaries under ERISA.

**1. Fiduciary Status Under ERISA**

Under ERISA § 402(a), 29 U.S.C. § 102(a), every employee benefit plan must appoint "one or more named fiduciaries who jointly or severally shall have

---

[6] The bankruptcy court relied on the following language from the trust documents: (1) the Welfare Plan trust document references "monies paid into the Trust Fund;" (2) the Pension Plan trust document states the "trust . . . shall consist of all employer contributions . . . made;" (3) the Joint Contribution Fund trust document refers to money "contributed" and "paid;" and (4) the Joint Apprenticeship Agreement refers to contributions "made." Based on these references, the district court accepted the conclusion that the trust documents "infer that the monies have to be paid into the funds before they become assets of the plan."

authority to control and manage the operation and administration of the plan."  In addition to these so-called "named fiduciaries," individuals may acquire fiduciary status if they exercise the fiduciary functions set forth in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  *Mertens v. Hewitt Assocs*., 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan. . . ."); *see* 29 C.F.R. §§ 2509.75-8, 2510.3-21 (describing various functions that do or do not create fiduciary status).[7]

Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), defines a person as a fiduciary of an ERISA plan to the extent that he:

> (i) [E]xercises any discretionary authority or discretionary control respecting management of such plan or *exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[7] For example, fiduciary status is imputed to individuals that render advice regarding the value of securities or property, recommend the purchase of certain securities, or exercise discretion with respect to purchasing or selling securities or property on behalf of the employee benefit plan.  29 C.F.R. § 2510.3-21(1).  On the other hand, activities such as the calculation of benefits, preparation of employee communication material, and the maintenance of employee records are not sufficient to impute fiduciary status.  *Id.* § 2509.75-8 at D-2.

(emphasis added).  The definition, thus, encompasses a variety of duties commonly performed by fiduciaries, including the providing of investment advice, administrative control over a plan, advising on whom to retain as legal or investment advisors to a plan, and, ultimately, how to invest plan assets.  Once deemed a fiduciary, either by express designation in the plan documents or the assumption of fiduciary obligations (the functional or de facto method), the fiduciary becomes subject to ERISA's statutory duties.  These duties, as summarized by the Supreme Court, "relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43 (1985).

Assessing whether a person is a named fiduciary under the terms of a plan is, of course, a straightforward inquiry.  Deciding whether a person has assumed functional or de facto fiduciary status, however, is a more difficult exercise.  To overcome this difficulty, courts frequently interpret the statutory language in ERISA § 3(21)(A) by referencing the common law of trusts.  *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996).  This is because "ERISA abounds with the language and terminology of trust law."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *see also Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570 (1985) ("[R]ather

-14-

than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility."). Indeed, given the close relationship between the law of trusts and ERISA's fiduciary responsibility provisions, the Supreme Court has instructed the federal courts to consider the law of trusts in "develop[ing] a federal common law of rights and obligations under ERISA-regulated plans."[8] *Firestone Tire & Rubber Co.*, 489 U.S. at 110 (citations and quotation omitted).

## 2. Authority or Control Respecting Management or Disposition of Plan Assets

We now look to the specific language of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). It is undisputed that the Lunas did not render investment advice under clause (ii) of the definition. Nor did the Lunas exercise discretionary responsibility under clause (iii) in the administration of the plans. Instead, this

---

[8] This is not to say that the law of trusts provides all the answers. "Beyond the threshold statement of responsibility . . . , the analogy between ERISA fiduciary and common law trustee becomes problematic. This is so because the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Thus, the traditional trustee at common law could not assume a position that would place his interests contrary to the interests of the trust's beneficiaries. *Id.* Under ERISA, however, an employer can "wear different hats," one as employer and one as fiduciary, even though his interests as employer may not always align with his interests as fiduciary. *Id.*

case focuses on clause (i) of the statutory definition.  Specifically, the issue we face is whether the Lunas "exercise[d] any authority or control respecting management or disposition of [plan] assets."

The question of whether the Lunas exercised authority or control over the asset at issue almost answers itself:  It is the Trustees, not the Lunas, who control the contractual right to collect unpaid contributions from the Lunas.  Whether to enforce their contractual rights is entirely up to the Trustees; the Lunas, meanwhile, have no say over whether this right will be enforced or not.[9]

Nonetheless, our analysis cannot stop here.  Emphasizing the "mutual character" of the relationship between an employer and an ERISA plan, at least one court has held that an employer-contributor exercises "authority or control" of plan assets solely by virtue of its duty "to report the basis on which contributions will be made to an ERISA fund," i.e., to give an accurate accounting of how much the employer is contributing each month. *Northern Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371,

---

[9] Tellingly, the Trustees' own brief emphasizes the Lunas' utter lack of discretion in deciding how to fulfill their end of the CBA.  Aplt. Br. at 11 ("Once wages are earned by plan participants, the employer has a contractual obligation to pay benefits to the Funds."); *id.* at 13 ("It is undisputed that the contributions owed by . . . Luna Steel pursuant to the collective bargaining agreement were due and owing."); *see also id.* at 16 (quoting a provision in the collective bargaining agreement that "[t]he *Trustees* shall have *full and exclusive authority and discretion* to determine all questions of coverage and eligibility under the Trust, the Plan, and all associated documents. . . .") (emphasis added).

1372 (9th Cir. 1990). Under this view, even though an employer agrees only to a contractual duty to make contributions, its discretion to exercise prudence in upholding this duty—i.e., to pay or not to pay—is enough to make it an ERISA fiduciary. In other words, an employer automatically becomes a fiduciary of an ERISA plan as soon as it breaches its agreement to make employer contributions. We disagree with this logic.

In our view, an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund. ERISA's text and purpose, the law of trusts, Department of Labor regulatory pronouncements, and case law all lend support to our conclusion.

*(a) Statutory Language.*

We begin by looking at ERISA as a whole to see what it says about fiduciary status. First, the ERISA definition of "fiduciary" contrasts with the ERISA definition of a "party in interest," which includes, among other entities, "any fiduciary . . . counsel, or employee of [an] employee benefit plan . . . , a person providing services to such plan . . . , an *employer any of whose employees are covered by such plan* . . . , [and] an employee organization any of whose members are covered by such plan . . . ." ERISA § 3(14), 29 U.S.C. § 1002(14) (emphasis added). In other words, all "fiduciaries" are "parties in interest" but not all "parties in interest" are "fiduciaries." The statute thus places employers such

-17-

as the Lunas in a category of "party in interest" quite apart from the category of "fiduciary." Just from reading the face of the statute, therefore, we would be hard-pressed to infer that the Lunas are ERISA fiduciaries simply because as employers they had a contractual obligation to pay contributions for the benefit of their employees.

Second, ERISA addresses the issue of delinquent contributions to an employee benefit plan wholly separate and apart from the statute's fiduciary obligation sections. Section 515 of ERISA, 29 U.S.C. § 1145, states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

Thus, ERISA § 515 "creates a federal right of action independent of the contract on which the duty to contribute is based and may be enforced by an action brought in the district court." *Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 633 (D.C.C. 1989). The fact that Congress so explicitly addressed the issue in § 515 suggests that reliance on ERISA's fiduciary obligation sections was not intended in delinquent contribution cases such as this one.

More to the point, the language of ERISA § 3(21)(A) does not support a finding that the Lunas acted as fiduciaries. As noted, the relevant language states that a person assumes fiduciary status to the extent he or she "exercises any

-18-

authority or control respecting management or disposition of its assets." The plain meaning of the operative words suggests that Congress envisioned a greater degree of responsibility than was exercised by the Lunas. The act of failing to make contributions to the Funds cannot reasonably be construed as taking part in the "management" or "disposition" of a plan asset.[10] The asset in question, it must be remembered, is the Trustees' contractual right to collect the unpaid contributions, and the Lunas exercised no control over how the Trustees manage or dispose of that asset.

Even if, however, the asset were the unpaid contributions themselves, it is still not clear that the statutory definition would be met. For one, there were never any earmarked funds or segregated accounts for the contributions. And secondly, courts have noted that the "management or disposition" language "refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18, 28 (2d Cir. 2002) (quoting *Johnson v. Georgia-Pacific Corp.,* 19 F.3d 1184, 1189 (7th Cir. 1994)). The

---

[10] "Management" is defined as "the act or art of managing, as . . . the conducting or supervising of something . . . especially the executive function of planning, organizing, coordinating, directing, controlling, and supervising any . . . activity with responsibility for results." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1372 (2002). "Disposition" is defined as "the act or power of disposing . . . [as in] placing elsewhere, a giving over to the care or possession of another, or a relinquishing." *Id.* at 654.

Lunas exercised no such authority or control here. The statutory language, thus, does not support the Trustees' contention that the Lunas were fiduciaries under ERISA.

*(b) Law of Trusts.*

Our interpretation of the statutory language is also supported by the law of trusts. First, a trustee is almost always given powers of management over trust property, *see* George Gleason Bogert, TRUSTS & TRUSTEES § 50 (2d ed. 1984), which, as we have shown, the Lunas do not have. Additionally, at common law, "fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 231 (2000) (citing G. Bogert & G. Bogert, LAW OF TRUSTS AND TRUSTEES §§ 551, 741–747, 751–775, 781–799 (2d. ed. 1980); 2A A. Scott & W. Fratcher, TRUSTS §§ 176, 181 (4th ed. 1987)). "Trustees buy, sell, and lease investment property, lend and borrow, and do other things to conserve and nurture assets. They pay out income, choose beneficiaries, and distribute remainders at termination." *Id.* Making contractually-owed contributions to an ERISA plan bears only a limited resemblance, if any, to these traditional fiduciary responsibilities.

In fact, given the context of the CBA whereby the Lunas agreed to make regular contributions to the Funds, as we have discussed above, the relationship between the Lunas and the Funds is best characterized as contractual, not

fiduciary. This is well-supported by the law of trusts: A contract to convey property does not give rise to a fiduciary relationship. *See* THE RESTATEMENT (THIRD) OF TRUSTS § 5(i) and cmt. i (2001). Furthermore, the relationship of debtor to creditor that results from contract is not fiduciary in nature. *Id.* at § 5(k). As explained in the Restatement, "When a trust is created there is a fiduciary relationship between the trustee and the beneficiaries . . . . A debtor does not as such stand in a fiduciary relationship to his or her creditors. A creditor as such has against the debtor merely a personal claim, which can be enforced by judicial proceedings to reach the debtor's property." *Id.* at cmt. k.

Thus, as with the statute's language, the law of trusts does not support the Trustees' contention that the Lunas were fiduciaries under ERISA—in fact, it compels the opposite conclusion.

*(c) Regulatory Interpretations.*

Next, the Department of Labor's guidance with respect to ERISA's definition of "fiduciary" makes clear that persons who have "no power to make any decisions as to plan policy, interpretations, practices or procedures," but instead who perform only "administrative" or "ministerial functions" related to the plan, are not fiduciaries under ERISA § 3(21)(A). 29 C.F.R. § 2509.75-8 at D-2. The question, then, is whether the Lunas' obligation to make contributions under the CBA is more akin to a plan administrator's ability to make decisions as to plan

-21-

policy, practices, or procedures, or whether it is closer to non-fiduciary ministerial functions. In our view it is the latter. Ministerial functions include, among other things, the "[c]ollection of contributions and application of contributions as provided in the plan." *Id.* This ministerial function closely resembles the Lunas' obligation to make plan contributions according to the dictates of the CBA.

 *(d) Case Law.*

 Turning to ERISA case law, we begin with the noncontroversial position that the Lunas' status as employers, standing alone, is not enough to confer fiduciary status. *Siskind v. Sperry Retirement Program*, 47 F.3d 498, 505 (2d Cir. 1995) ("An employer acts as a fiduciary within the meaning of ERISA . . . only when fulfilling certain defined functions. . . ."); *Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir. 1991) ("Generally, employers owe no fiduciary duty toward plan beneficiaries under the ERISA."); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) ("Once [employer] appointed the Plan Administrator and gave him control over the Plan, [employer] was no longer a fiduciary because it retained no discretionary control over the disposition of claims."). Therefore, for the Trustees to prevail, they must point to something about the Lunas' relationship to the Funds that indicates authority or control over the management or disposition of a plan asset. This they cannot do.

A number of cases support the proposition, which we discussed above, that the true nature of the relationship between the Lunas and the Funds was contractual, and not fiduciary, in nature. *See Hunter v. Philpott*, 373 F.3d 873, 877 (8th Cir. 2004) (in a bankruptcy case involving the same plaintiffs and same CBA at issue here, holding that "the substance of the relationship between [defendant] individually and the Funds was basically contractual, not fiduciary, in nature"); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1016 (11th Cir. 2003) (Barkett, J., concurring) ("An employee pension plan that identifies receivables as a type of asset does not thereby create fiduciary obligations on the part of persons with control over the actual funds out of which obligors might satisfy these outstanding claims.").

Following from this proposition is the conclusion that a delinquent employer-contributor is merely a debtor, not a fiduciary.[11]  Meanwhile, the benefit

---

[11] Our conclusion that the Lunas were debtors to the plan rather than fiduciaries is further supported by the context of this case.  It must be remembered that the ultimate question facing this court is whether the Lunas' debt to the Funds is nondischargeable under bankruptcy law, 11 U.S.C. § 523(a)(4).  Because this case arises under the Bankruptcy Code, not ERISA, it reinforces the notion that the Lunas' relationship to the plan is debtor/creditor, rather than fiduciary.  *See Hunter*, 373 F.3d at 876.

The RESTATEMENT (THIRD) OF TRUSTS § 5 cmt. k also supports this conclusion.  It states, in the context of agreements between employers and employees to deduct certain amounts from the employee's wages,

(continued...)

-23-

plan does not own the actual unpaid contributions, but only a contractual claim for damages.[12] It is the Trustees, not the Lunas, that exercise control over the contractual right to unpaid contributions. Under the CBA, the Lunas had no duty other than to make monthly contributions, and no discretion other than to fail to make those required contributions. The mere discretion whether to pay debts owed to an employee benefit plan, however, does not suffice to confer fiduciary status under ERISA. *See Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002) (where employer owed money to multi-employer pension fund, holding that employer was not a fiduciary because it

[11](...continued)
"[A] trust arises as to the amounts deducted as soon as they are either set aside by the employer for the employees' purposes or paid over to another person for those purposes. Until then, *the employer's obligation is merely a debt*, with the "obligee" (the employer or other person) *holding a chose in action* (the claim against the employer) in trust. The claim that is held in the trust estate is like the claims of the other general creditors of the employer except to the extent of any preference that may be conferred by statute or other rules of law or equity, preferences that are not peculiar to the trust law."

(emphasis added).

Thus, according to the Restatement, a trust arises only when an employer actually deducts and sets aside amounts from an employee's salary. In this case, however, the Lunas never deducted amounts from their employees' wages.

[12] The CBA, in fact, specifically contemplates that the Lunas' failure to make contributions would give rise to a contractual claim. It provides that the Lunas, in the event of breach, are responsible for liquidated damages, costs of collection, attorney's fees, and audit fees. CBA § XXI(C).

-24-

played no role in the management or investment of assets); *Kopilas v. Disipigna*, 1992 WL 96360, No. 90-DIV. 5075 (JFK), at *3 (S.D.N.Y. 1993) (holding that employer was not a fiduciary because "[w]hile the collective bargaining agreement required [employer] to make periodic contributions to the plan, there is no indication and no allegation that [employer] exercised authority and control of any kind with respect to the Pension Plan"); *Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co.*, 709 F. Supp. 140, 145 (N.D. Ill. 1989) (in case based on allegations that employer failed to make contributions as required by a collective bargaining agreement, noting that "this court would be surprised to learn that [employer] holds any authority, discretionary control, or responsibility with respect to management or administration of the plaintiffs' funds or assets").[13]

Admittedly, there is contrary authority suggesting the discretion whether to pay contractually-owed monies to an employee benefit plan is sufficient to establish fiduciary status. *See Jumbo Markets, Inc.*, 906 F.2d at 1372; *Bd. of*

---

[13] Our holding that employers who fail to pay contractually-owed contributions to a plan are not, by virtue of that fact alone, fiduciaries, must be distinguished from the situation where an employer has control over funds that were withheld from employees' pay checks. Where the issue is not *employer* contributions (as here), but rather *employee* contributions held by the employer, courts will recognize that the employer meets ERISA's statutory definition of a fiduciary. *See, e.g., Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 219 (4th Cir. 2005) ("Where . . . an employer is entrusted with employee funds for remittance to a claims administrator . . . the employer is acting in a fiduciary capacity under ERISA.").

*Trustees v. J.R.D. Mech. Servs. Inc.,* 99 F. Supp. 2d 1115, 1122 (C.D. Cal. 1999) (citing cases). Such cases, however, are either easily distinguished on the facts, *see, e.g.*, *Pension Ben. Guar. Corp. v. Solmsen*, 671 F. Supp. 938 (E.D.N.Y. 1987),[14] or otherwise identify the plan asset as the actual unpaid contributions—i.e., the pool of funds—rather than, as we have held, a contractual right belonging to the fund trustees. When the asset in question is properly identified as a contractual right to unpaid contributions, the issue of control over that asset is straightforward. *See Witt v. Allstate Ins. Co.*, 50 F.3d 536, 537 (8th Cir. 1995) (holding that an insurer of a third-party tortfeasor was not an ERISA fiduciary merely because it owed money to the employee benefit plan); *Chapman v. Klemick*, 3 F.3d 1508, 1508 (11th Cir. 1993) (rejecting the view that a person "breached his fiduciary duty to the trust fund by disposing of [monies]" contrary to an agreement with an employee benefit fund).

Another essential ingredient in this case is the fact that the Lunas, as owners of a closely-held corporation, were required to make business decisions with respect to general corporate funds. Such business decisions must not be confused with fiduciary actions. It is well-established that an ERISA fiduciary can "wear

---

[14] In *Solmsen*, for example, in addition to failing to pay contributions to the plan, the defendant was named as "Trustee" in plan documents, admitted that he acted as "plan administrator," exercised authority to transfer plan assets between funds, and made decisions regarding payments to plan participants.

two hats," meaning an individual can be both an employer and a fiduciary. *See, e.g., Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1417 (2d Cir. 1985). Therefore, as the Supreme Court has noted, the "threshold question" in an action for breach of fiduciary duty is whether the alleged fiduciary "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Because virtually every business decision an employer makes can have an adverse impact on an employee benefit plan, *Varity Corp. v. Howe*, 516 U.S. 489, 527 (1996) (Thomas, J., dissenting), courts must "examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties." *COB Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citation and quotation omitted). This is so even where some of the decisions personally benefitted the employer, such as some of the payments made by the Lunas to themselves for personal expenses. *Cf. Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1523–25 (5th Cir. 1994) (holding that even though employer was motivated by self-interest in amending an employee stock bonus plan, employer was not acting in a fiduciary capacity, but rather making a "business decision" not regulated by ERISA).

Under the circumstances of this case, the Lunas' decision to use their limited funds to pay other business expenses rather than to make contributions to the Funds was a business decision, not a breach of fiduciary duty. *See Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987) (corporate president's decision to pay business expenses rather than insurance premiums was a business decision not regulated by ERISA). In an attempt to keep the company afloat in the face of deteriorating finances, the Lunas opted to pay expenses such as employee wages, insurance, and equipment leases. The company's financial condition was so severe, in fact, that Joyce Luna withdrew funds from her IRA to help cover expenses and Mark Luna borrowed money from a local bank for company use. Although the decision to pay expenses rather than make plan contributions had an adverse impact on the Funds, we decline to impute fiduciary status to the Lunas based on this fact alone.

*(e) Statutory Purpose.*

Finally, we are confident that our decision honors the statutory balance struck by Congress. As one court has stated,

> If ERISA did not limit the definition of fiduciaries to those with knowledge of their authority and discretion, then persons or entities could become subject to fiduciary liability without notice. Such a result would not only be unfair, but it would also disserve a core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interests of participants in ERISA plans.

-28-

*Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1366 (11th Cir. 1997). Indeed, at the time the Lunas signed the CBA, nobody would have suggested by virtue of the agreement that they became bound automatically by the fiduciary obligations spelled out in 29 U.S.C. §§ 1102, 1103, 1104, 1105, 1106, 1108, 1110, 1111, and 1112 (various statutory obligations of ERISA fiduciaries).

ERISA's definition of "fiduciary" is broad but not all-encompassing. Every employer in some sense has discretion in meeting its obligations. But discretion alone does not confer fiduciary status under ERISA. If it did, any obligor to an employee benefit plan could become an ERISA fiduciary. One can imagine, for example, a business that rents space in an investment property owned by a pension fund. Under the Trustees' logic, the tenant's failure to pay its rent obligation might create a de facto fiduciary relationship nondischargeable in bankruptcy.

Plainly, Congress did not intend such a rule, for it would, among other things, undermine the very purpose of ERISA by creating an enormous disincentive to offer an employee-benefit fund or contract with one. We recognize, of course, that Congress enacted ERISA because it found that prior law did not sufficiently protect the rights of plan beneficiaries. This does not mean, however, that Congress meant to impose fiduciary obligations on all employer-contributors. In the absence of Congressional direction, therefore, we are not inclined to expand ERISA beyond its plain meaning and hold that the officers of a

company who contract with an ERISA-covered fund automatically become fiduciaries under the Bankruptcy Code.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.