**Howard LEVY, Burton Lewis and Isidore Rothman, as the Employer Trustees of the United Wire, Metal & Machine Pension Fund and the United Wire, Metal & Machine Health & Welfare Fund, Plaintiffs,**

v.

**LOCAL UNION NUMBER 810, affiliated with the International Brotherhood of Teamsters; Max Sanchez; Stephen Silverman; and Thomas Auld, Defendants–Appellants,**

**Joseph Padellaro, as Trustee of Local Union Number 810, affiliated with the International Brotherhood of Teamsters, Defendant–Appellee.**

No. 1242, Docket 93–9156.

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1994.

Decided March 28, 1994.

Barry N. Saltzman, New York City (Joseph E. Gulmi, Andrew E. Graw, David L. Weissman, Shea & Gould, New York City, of counsel), for defendants-appellants.

Jani K. Rachelson, New York City (Dominique Bravo, Cohen, Weiss & Simon, New York City, of counsel), for defendant-appellee.

Before: MESKILL, KEARSE and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This is an appeal from a declaratory judgment of the United States District Court for the Southern District of New York (Whitman Knapp, J.) specifying who are the lawful union-representative trustees of two welfare and benefit funds affiliated with Local 810, International Brotherhood of Teamsters. The trustees competing for recognition are the original slate that had been designated by Local 810's elected officers and subsequently removed by the union's international trustee (the "Original Slate"), and those designated by the international trustee to replace those he removed (the "Replacement Slate"). The Original Slate contended that certain 1974 amendments to the trust agreements governing the funds barred their removal. The district court found that these amendments insulate the union-designated trustees from accountability and therefore violate the Employees Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 *et seq.* (West 1985), as well as Section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C.A. § 186 (West 1978). The district court accordingly refused to enforce those insulating amendments, upheld the international trustee's removal of the Original Slate, and ruled that the Replacement Slate trustees, designated by the international trustee, were the lawful union-representative trustees of the benefit funds. We agree with the district court's ruling under ERISA and affirm the judgment.

## I. Background

In September 1993, by reason of indications that the officers of Local 810 of the International Brotherhood of Teamsters ("IBT") were engaging in financial misconduct, Ron Carey, the General President of IBT, acting in accordance with the constitution of the International Union, removed the Local's officers and imposed a trusteeship, naming Joseph Padellaro as the international trustee of Local 810. An international trustee so appointed exercises all of the powers of the union local, including the power to remove union officers.[1] Padellaro promptly removed and suspended the officers and executive board of Local 810. (The authority of Padellaro to remove the officers and assume management of the Local itself is not at issue in this case.[2])

Among the functions of a local union is the appointment of union-representative trustees to the welfare and benefit funds established for the benefit of the union's members. Such funds are often referred to as "Taft–Hartley

---

1. The constitution of the International provides that an international trustee is "authorized and empowered to take full charge of the affairs of the Local Union or other subordinate body, to remove any or all officers ... and to take such other action as in his judgment is necessary for the preservation of the Local Union or other subordinate body and its interests." Art. VI, § 5(b). The constitution of Local 810 acknowledges in art. XX, § 20.08 that the International's constitution supersedes it wherever they conflict.

2. Judge Knapp's decision approving the international trusteeship was affirmed by this court in *International Bhd. of Teamsters v. Local Union Number 810,* 19 F.3d 786 (2d Cir.1994).

Funds," and, pursuant to federal law, are administered jointly by employer-designated trustees and union-designated trustees. 29 U.S.C.A. § 186(c)(5)(B) (West 1978). Local 810 is affiliated with two such employee benefit funds: the United Wire, Metal & Machine Pension Fund, and the United Wire, Metal & Machine Health and Welfare Fund (collectively "the Funds").

The Original Slate appointed by the Executive Board of Local 810 consisted of three officers and executive board members of the local[3] whom Padellaro removed from their union positions.[4] In addition to removing the officers and Executive Board of Local 810, Padellaro, as noted, removed the trustees of the benefit funds and named the Replacement Slate. Because Padellaro was clearly authorized to act for Local 810, *see International Bhd. of Teamsters v. Local Union Number 810*, 19 F.2d 786 (2d Cir.1994), his removal of the Original Slate would be non-controversial but for certain unusual features of the trust agreements governing these funds that were adopted in 1974.

In 1973, the IBT, then dominated by James Hoffa, had imposed a trusteeship over Local 810, and the international trustee had removed the union-representative trustees of the Funds. After the termination of the international trusteeship and the restoration of the elected officials and their designated Fund trustees, the trustees amended the trust agreements governing the Funds for the apparent purpose of preventing the recurrence of the removal of fund trustees by an international trustee.[5] Under these amendments (the "1974 Amendments"), Fund trustees can be removed only by the "duly elected" Executive Board of Local 810, and only for malfeasance. Additionally, Fund trustees can be appointed only by the "duly elected" executive board, and serve staggered three year terms. The 1974 Amendments go on to provide that no international trustee "shall have any voice or vote in the selection or removal of a Trustee" and that "[i]n the event that there shall be no [elected] Executive Board in office ... the predecessor Trustee shall remain in office until such time as his successor shall be elected [by an *elected* Executive Board]...."[6] Thus, the 1974 Amendments insulate Fund trustees from any exercise of control whatsoever by an international trustee of the local union. They bar the international trustee from removing the fund trustees—even in cases of misconduct and upon the expiration of their terms—as well as from filling vacancies.

Relying on the 1974 Amendments, the Original Slate refused to acknowledge its removal by International Trustee Padellaro; meanwhile, the Replacement Slate claimed

---

**3.** In most union locals, there is significant overlap between local union officers and the fund trustees. Daniel B. Cohen, a senior vice-president of The Segal Co., a consultant to more than 100 Taft–Hartley funds, noted in his affidavit that "in every Taft–Hartley fund that I work with that is sponsored by only one union, the union trustees include the principal officers and business agents of the union."

**4.** Additionally, the court-appointed Independent Administrator supervising the IBT, *see generally United States v. International Bhd. of Teamsters*, 998 F.2d 1101 (2d Cir.1993), has ordered that two of the three Original Slate members be suspended from their union positions because of acts of financial mismanagement.

**5.** Two of the trustees who voted on the 1974 amendments were officers of Local 810 who had been removed as union officials during the 1973 trusteeship. *All* of the union-nominated trustees who voted on the 1974 amendments had been removed as fund trustees during the 1973 international trusteeship. Max Sanchez, one of the trustees and union officials removed in 1993 by Padellaro, was in the group removed twenty years earlier, as was Dennis Silverman, the brother of fund trustee-appellant Stephen Silverman.

**6.** The relevant text of the Amendments is as follows:

(d) ... No person, Trustee of the Union, or Trustee designated member of the Executive Board of the Union ... except he be a duly elected member of the Local Executive Board properly elected by the membership of the Local, shall have any voice or vote in the selection or removal of a Trustee.

(e) A Trustee may be removed by the Executive Board of the Local during his term in office only for malfeasance in office and by a vote of the Executive Board members authorized to have a vote in selection of a Trustee as hereinabove provided and in such case the said voting members of the Executive Board entitled to name a Trustee shall select his successor for the balance of his term.

authority to act. The employer-designated Fund trustees then brought this action, seeking a determination as to who were their lawful co-trustees.

The Original Slate contended that the 1974 Amendments provide reasonable lawful restrictions to insure continuity and stability of the management of the Funds, and that, at least, they validly prevent removal of the Original Slate prior to the expiration of their staggered three year terms. Padellaro and the Replacement Slate contended that the 1974 Amendments violate ERISA and LMRA in that they illegally entrench the trustees, rendering them unaccountable to the Local and its members. As noted above, Judge Knapp ruled in favor of the Replacement Slate, whereupon the Original Slate brought this appeal.

## II. Discussion

Judge Knapp concluded that the 1974 Amendments are incompatible with the fiduciary obligations imposed by ERISA, and are therefore unenforceable.[7] We agree.

Section 404(a)(1)(A) of ERISA provides with respect to employee benefit plans that:

(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan.

29 U.S.C.A. § 1104(a)(1)(A) (West 1985).

This provision has been understood to impose strict fiduciary obligations on the trustees of such employee benefit funds. Thus, in *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), Judge Friendly, explaining the legal standard governing trustees of such funds, held that "their decisions must be made with an eye single to the interests of the participants and beneficiaries." *See also Int'l Bhd. of Teamsters, Joint Council 18 v. Health & Hosp. Fund*, 903 F.2d 919, 923 (2d Cir.) (fund trustees' actions will be reviewed to see if they acted "illegally, in bad faith, or arbitrarily"), *cert. denied*, 498 U.S. 898, 111 S.Ct. 251, 112 L.Ed.2d 210 (1990).

Several authorities have concluded that trust agreements that excessively protect fund trustees from removal violate the fiduciary mandates of ERISA because they insulate trustees from responsibility for failure to carry out their fiduciary duties. In 1985, in an opinion letter, the Department of Labor considered the question whether the appointment of benefit fund trustees for life, in the absence of fiduciary misfeasance, was compatible with the fiduciary responsibilities imposed by ERISA. Department of Labor, Pension & Benefit Welfare Programs, Opinion 85–41 A, December 5, 1985 (1985 ERISA LEXIS 3) (hereinafter "DOL Opinion"). The Department reasoned that the congressional mandate of "high standards of loyalty and prudence," *id.* at *2, implied a requirement "that the conduct of [the fund trustee] should be subject to effective oversight on behalf of plan participants and beneficiaries." *Id.* at *2–*3. This goal required that arrangements with fiduciaries be subject to termination "on reasonably short notice under the circumstances so the plan would not become locked into an arrangement that may become disadvantageous." *Id.* at *3. The Department observed that these "principles ... may be frustrated where a plan sponsor ... can [remove a trustee and appoint a successor] only upon successfully bringing such charges as misfeasance or incapacity...." *Id.* The Department concluded that, notwithstanding removability for misfeasance, "a lifetime term of appointment ... would be inconsistent with ERISA's fiduciary responsibility provisions." *Id.* at *2.

In *Joint Council 18*, 903 F.2d 919, this court considered a challenge to amendments

---

7. Jurisdiction is conferred by 29 U.S.C.A. § 1132 (West 1985), which provides that a civil action may be brought "(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter ... or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...."

that redistributed the power to appoint and remove union representative trustees to benefit funds, which challenge was based in part on the contention that the amendments entrenched the trustees. While this court implicitly accepted the theory of the complaint—that trust provisions which excessively insulated benefit plan trustees from removal would violate ERISA—we found that theory inapplicable to the facts. We upheld the amendments under ERISA because we found they tended "to reduce, not increase, the opportunities of employee trustees to entrench themselves." *Id.* at 923.

A similar challenge was raised in *Teamsters Local No. 145 v. Kuba,* 631 F.Supp. 1063 (D.Conn.1986). The district court there ruled that a plan amendment that barred removal of trustees except for "proper and just cause" was designed to entrench the trustees in their positions even if they lost their positions in the union's leadership. The adoption of these amendments was found to be a failure to " 'discharge [the trustees'] duties with respect to a plan solely in the interest of the participants and beneficiaries' as required by 29 U.S.C. § 1104(a)(1)." *Id.* at 1072 (citation omitted).

The reasoning of these authorities leads us to conclude that the 1974 Amendments cannot be reconciled with the fiduciary obligations imposed by Section 404(a)(1). As noted above, during a period in which the elected executive board of the local union has been ousted by a trusteeship imposed by the international union—the situation in this case—the trustees of the benefit plan are immune from removal, even in the event of their malfeasance or upon the expiration of their stated terms. The plan trustees are therefore *not* "subject to effective oversight on behalf of plan participants and beneficiaries," DOL Opinion at *3, and their service is *not* terminable "on reasonably short notice." *Id.* Under these amendments the plans are

unquestionably "locked into an arrangement that may become disadvantageous" to the benefit fund. *Id.* Indeed, the regime provided by these amendments is far more insulating than that found unlawful in *Kuba,* for in that case the plan trustees continued to be removable for "proper and just cause;" whereas here, during the international trusteeship, they are not removable at all.[8]

We reject the insubstantial arguments offered by the Original Slate in support of the 1974 Amendments. The Original Slate contends these amendments were passed simply to ensure stability and continuity at the funds by providing for staggered three year terms. They contend, furthermore, that the lawfulness of such trustee terms is supported by the DOL Opinion, which stated, "We do not intend to suggest that trustees should serve only at will. Limited terms, such as for a specified number of years, that are reasonable under the facts and circumstances of the plan generally would be consistent with ERISA." DOL Opinion at *4.

This argument misstates the nature of the entrenchment provided by the 1974 Amendments. We do not here pass on whether three year terms would be consistent with ERISA. As noted, we are here presented with unlimited tenure for the duration of a trusteeship over the union. And even if these amendments were passed solely to provide for stability and continuity in the administration of the benefit funds, the problem is simply that they provide *too much* continuity. During the trusteeship over the union, the amendments completely insulate the plan trustees from any and all oversight on behalf of the plan beneficiaries to insure compliance with the fiduciary obligations imposed by ERISA.

Judge Knapp was therefore correct in striking down the 1974 Amendments and upholding Padellaro's removal of the Original Slate.[9]

**8.** We note that both the Original Slate and the fund trustees who voted for the amendments at issue in 1974 were removed as officers of the local union upon allegations of financial misconduct.

**9.** The district court reached its judgment—voiding the 1974 Amendments and upholding the

designation of the Replacement Slate—also by reference to the standards of Section 302(c)(5) of LMRA, 29 U.S.C.A. § 186(c)(5) (West 1978). The Original Slate contends that the relief granted by the district court under LMRA goes beyond what is authorized by the Supreme Court's holding in *Local 144 Nursing Home Pension Fund v. Demisay,* —— U.S. ——, 113 S.Ct. 2252, 124 L.Ed.2d

*Conclusion*

The judgment of the district court declaring the Replacement Slate designated by the international trustee of Local 810 to be the lawful trustees of the Funds is affirmed.

522 (1993). Because our affirmance on the basis of ERISA resolves the appeal, we need not address the disputed issues as to LMRA.