**Hilda SOLIS,[1] Secretary of the United States Department of Labor, Plaintiff,**

v.

**PLAN BENEFIT SERVICES, INC., Defendant.**

**Civil Action No. 07–11474–DPW.**

United States District Court, D. Massachusetts.

March 20, 2009.

1. Pursuant to Fed R. Civ. P. 25(d), Secretary Hilda Solis has been substituted for former Secretary Elaine L. Chao.

Kelly M. Lawson, Office of The Regional Solicitor, Michael D. Felsen, U.S. Department of Labor, Boston, MA, for Plaintiff.

Jeffrey S. Patterson, William T. Hogan, III, Nelson, Mullins, Riley & Scarborough, LLP, Christopher S. Brolly, Corwin & Corwin LLP, Boston, MA, Tess J. Ferrera, Thompson Hine, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

DOUGLAS P. WOODLOCK, District Judge.

The Secretary of the United States Department of Labor ("Secretary" or "DOL") brings this action against Plan Benefit Services, Inc. ("PBS") for alleged violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* PBS is the Master Plan Sponsor ("Plan Sponsor") and Recordkeeper of the Contractors and Employees Retirement Plan ("Master Plan"), through which employers have established plans that provide retirement benefits to employees working under certain public contracts. The Secretary alleges that PBS violated its fiduciary duties as Master Plan Sponsor by failing to ensure the collection of employer contributions by the Trustee

and that the Plan provision relieving the Trustee from the obligation to collect employer contributions is void as against public policy. The parties have submitted cross-motions for summary judgment.

## I. BACKGROUND

### A. Factual Background

The Contractors and Employees Retirement Plan is a plan that allows employers who adopt it to provide pension benefits. The Master Plan currently services approximately 1,100 retirement plans ("Participating Plans"). Each employer executes an agreement ("Adoption Agreement") that establishes either a 401(k) profit-sharing plan or a money purchase plan. Through these retirement plans, employers provide pension benefits to employees who work under public contracts subject to the Davis–Bacon Act, the Service Contract Act, or any other federal, state or municipal prevailing wage law.

Employers are governed not only by the Master Plan, but also by the Contractors and Employees Retirement Plan Master Trust Agreement ("Trust Agreement"). Under the Trust Agreement, employer contributions are deposited into the Contractors and Employees Retirement Plan Master Trust ("Master Trust"). The Master Trust has a Trustee, which has the authority "[t]o invest, manage, hold and control the assets of the [Master Trust] in a manner consistent with the terms of the Plan and the Master Trust Agreement." From at least January 2005 until December 31, 2006, the Trustee was Reliance Trust Company ("Reliance"). RSGroup Trust Company ("RSGroup") has been the Trustee since January 1, 2007.

Until December 31, 2004, the Plan Sponsor was Associated Prevailing Wage Contractors, Inc. Since January 2005, PBS has been the Plan Sponsor for the Master Plan. As Plan Sponsor, PBS has the au-

thority to appoint and remove the Trustee. PBS is responsible for the language in the Master Plan and the Adoption Agreements, and has the authority to amend the Master Plan, the Trust Agreement, and the form of the Adoption Agreement. PBS is also responsible for approving "reasonable compensation" for the Trustee, paid out of the Master Trust.

PBS has also been the Recordkeeper for the Participating Plans since January 2005. As Recordkeeper, PBS is responsible for computing, certifying and directing the Trustee as to the amount and form of benefits for which a participant may be eligible under the Master Plan. PBS also has the authority to direct the Trustee to make disbursements from the Master Trust, and can interpret provisions of the Master Plan.

The employers, under the Master Plan, are the "Plan Administrators." The employers' responsibilities are identified in Article 9.01 of the Master Plan: "By adopting this Plan, the Employer agrees to have such contributions as may be made hereunder contributed to the [Master Trust], . . . and to be bound by the terms of the trust agreement which governs such Trust." Article VIII of the Master Plan states that the "[e]mployer shall make any contributions required under Article III of the Plan and shall maintain records, including payroll records, necessary to support such Employer Contributions."

The provision at issue in this case involves specification of Trustee responsibilities. The Master Plan and Trust Agreement explicitly state that the Trustee is not responsible for monitoring and collecting employer contributions.

The Trust Agreement states in Article 1.07(a) that:

The Trustee shall be accountable for all contributions received by it, but shall have no duty to require any contribu-

tions to be made to it, or to determine that the amounts received comply with the Plan, or to determine that the fund is adequate to provide the benefits payable pursuant to the Plan.

The Master Plan states in Article 9.02 that the "Trustee does not have any duty to see that the contributions received comply with the eligibility, contribution rate or other provisions in the Plan."

During the time periods relevant to this suit—January 1, 2005 until the present—the Master Plan and the Trust Agreement did not authorize either Reliance or RSGroup to take direction from a named fiduciary who was not a trustee. The Master Plan and Trust Agreement also did not authorize a named fiduciary to delegate authority to manage, acquire or dispose of the Participating Plans' assets to investment managers.

## B. Procedural History

The Secretary filed her initial Complaint in August 2007, identifying as defendants both PBS and Linskey Construction, Inc. ("Linskey"). Linskey, an employer who participated in the Master Plan, was a Plan Administrator. The Secretary alleged that Linskey had failed to make contributions that were owed to the Master Plan. I entered an Order on January 31, 2008, granting a partial consent judgment between Linskey and the Department of Labor whereby Linskey agreed to pay restitution of the funds owed to the Master Plan.

The Secretary thereafter submitted an Amended Complaint with PBS as the sole Defendant. The Secretary and PBS have filed cross-motions for summary judgment as to that complaint.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must construe the facts "in the light most favorable to the party opposing the motion." *Coffin v. Bowater Inc.*, 501 F.3d 80, 85 (1st Cir. 2007). When there are cross-motions for summary judgment, the basic standard of Rule 56 does not change; it "rather simply require[s] the courts to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001).

## III. ANALYSIS

ERISA is a comprehensive federal statute "designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The thrust of the Secretary's allegations against the Defendant is that a provision of the Master Plan relieves the Trustee of statutory obligations, in violation of ERISA requirements and PBS's own fiduciary duties.

The allegations involve three key provisions of ERISA: Sections 403, 404, and 410. Section 403 states that trustees, with two exceptions, shall have exclusive authority and discretion over the management of plan assets. 29 U.S.C. § 1103(a). Section 404 outlines the fiduciary duties that are involved in the management of employee retirement plans. 29 U.S.C. § 1104(a)(1). Section 410 states that any provision that relieves a fiduciary of its responsibilities is void as against public policy. 29 U.S.C. § 1110. The Secretary makes two specific legal claims: (A) PBS has violated its fiduciary duties under Section 404 of ERISA because it has relieved the Trustee of responsibilities for collection of employee contributions; and (B) the Master Plan provision relieving the

Trustee of responsibility for collection of employee contributions is void as against public policy pursuant to Section 410.

I will address the Section 404 fiduciary duties claim separately from the Section 410 public policy claim. I will then proceed to discuss the Defendant's argument that the Plaintiff's suit is time-barred by ERISA's limitations period. I conclude with a Coda regarding the use of litigation to obtain judicial rule-making.

## A. Fiduciary Liability under Section 404

Section 404 lays out the obligations of ERISA fiduciaries. The Secretary's Section 404 claim relies on three related arguments: (1) that under Section 403, the Trustee is responsible for plan assets, assets that include the right to collect employer contributions to the Master Trust; (2) that PBS is a fiduciary for purposes of ensuring that the Trustee is fulfilling its ERISA obligations; and (3) that PBS violated its fiduciary duties under Section 404 by relieving the Trustee of an obligation under Section 403, i.e., its responsibility for the collection of employer contributions. The legal framework of the argument thus depends first on whether the Master Plan contravenes Section 403.

### 1. *"Plan asset" under Section 403*

Section 403 of ERISA, which addresses the establishment of a trust for the assets of a benefits plan, identifies certain requirements for the treatment of those assets:

> Except as provided in subsection (b) of this section, all assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument . . .

or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan . . . .

29 U.S.C. § 1103(a). There are two exceptions to the rule requiring trustees' exclusive authority over plan assets: if the plan expressly provides that the trustee is subject to a named fiduciary who is not a trustee; or if authority over plan assets is delegated to an investment manager. § 1103(a)(1)-(2). It is undisputed that neither exception applies to the Master Plan and Trust Agreement at issue in this case. The Trustee therefore has "exclusive authority and discretion to manage and control" the assets of the Master Plan.

The root of the ERISA violation, according to the Secretary, is language in Article 1.07(a) of the Trust Agreement: "The Trustee . . . shall have *no duty* to require any contributions to be made to it, or to determine that the amounts received comply with the Plan . . . ." (emphasis added). The Master Plan contains parallel language in Article 9.02.[2] The Secretary argues that because these exculpatory provisions relieve the Trustee from any responsibility for collecting employer contributions, PBS failed to protect a "plan asset." The parties disagree, however, over whether the Master Plan's right to collect employer contributions is indeed a "plan asset" for purposes of ERISA law.

#### a. Interpretive Framework

A "plan asset," though referred to in ERISA, is not defined in the statute. *See* 29 U.S.C. § 1002 (defining terms used in ERISA). ERISA does provide that the term "plan asset" means assets "as defined by such regulations as the Secretary may

---

**2.** The Master Plan provides in Article 9.02 that the "Trustee does not have any duty to see that the contributions received comply with the eligibility, contribution rate or other provisions in the Plan."

prescribe." 29 U.S.C. § 1002(42). But the Secretary has not issued a regulation that defines a plan asset as including a right to collect employer contributions owed to a benefits plan.

In February 2008, however, the Department of Labor issued a Field Assistance Bulletin that addressed the issue whether trustees are responsible for collecting delinquent employer contributions. U.S. Dep't of Labor FAB No. 2008–01 (Feb. 1, 2008). The DOL stated its position that a plan has a claim against an employer for its unpaid contributions, and that this claim is an asset of the plan. *Id.* at 2.

PBS says no deference should be accorded to this FAB on several grounds. First, the FAB may have arisen from a desire to influence this litigation, a contention the DOL denies. Second, as directed by § 1002(42) of the statute, the DOL must issue regulations, subject to notice-and-comment rule-making, that interpret "plan asset" if it wants to provide a definition that receives deference from the courts. The Secretary offers a different interpretation of § 1002(42); she claims that the statute's provision for DOL regulations merely grants the Secretary the discretion to issue interpretive regulations ("as the Secretary *may* prescribe"), but does not close off other administrative avenues of interpretation.

■ I agree with the Secretary that formal notice-and-comment procedures are not the exclusive means by which the Department of Labor can express an interpretation of "plan assets" under ERISA. I conclude, however, that only a regulation issued pursuant to § 1002(42) should receive deference from the courts. *See United States v. Mead Corp.,* 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (holding that an agency interpretation merits deference when it has the authority to make rules carrying the force of law, and when the interpretation was pro-

mulgated in the exercise of that authority); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (giving deference to agency regulations when Congress has explicitly left a gap for the agency to fill). Field Assistance Bulletins are not created pursuant to ERISA's statutory rule-making authority, and are therefore not controlling under *Chevron* analysis.

■ The Secretary nevertheless contends that her Department's Field Assistance Bulletin merits some form of deference under *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). She is correct that under *Skidmore* if an agency issues an opinion regarding the statute it is charged with enforcing, the opinion is "entitled to respect" to the extent that it has the "power to persuade." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. *See River Street Donuts, LLC v. Napolitano,* 558 F.3d 111, 114–18 & n. 4 (1st Cir.2009). Because the DOL's analysis in FAB No. 2008–01 merely parallels the DOL's analysis in this case-and in a less developed way—my view of the FAB's "power to persuade" is subsumed in my analysis below of the Secretary's statutory interpretation.

b. The Property Rights Test

■ Interpretation of the statute begins with the text. *United States v. Godin,* 534 F.3d 51, 56 (1st Cir.2008). "Asset" is customarily defined as: "1. An item that is owned and has value. 2. (*pl.*) The entries on a balance sheet showing the items of property owned, including cash, inventory, equipment, real estate, accounts receivable, and goodwill. 3. (*pl.*) All the property of a person … available for paying debts or for distribution." *Black's Law Dictionary* (8th ed. 2004). Common to all three definitions is the concept of owner-

ship, which is generally governed by the common law of property. *See In re Luna,* 406 F.3d 1192, 1199 (10th Cir.2005) (citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (drawing on the common law to define "employee" for purposes of ERISA)).

■ This interpretation of the statute is consistent with the DOL's general position that "plan assets" should be defined on the basis of "ordinary notions of property rights under non-ERISA law." U.S. Dep't of Labor Advisory Opinion ("DOL AO") No. 93–14A (May 5, 1993); *see also* DOL AO No. 92–22A (Oct. 27, 1992); DOL AO No. 94–31A (Sept. 9, 1994); DOL AO No. 2005–08A (May 11, 2005). That definition includes "any property, tangible or intangible, in which the plan has a beneficial ownership interest." DOL AO No. 93–14A (May 5, 1993). I therefore join those courts that have found the Secretary's property rights test to be persuasive. *Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639, 647 (8th Cir.2007) (finding the Secretary's reasoning to be "thorough, valid, and particularly consistent"); *Luna,* 406 F.3d at 1199–1200 (citing the DOL's "ordinary notions of property rights" language as consistent with the Tenth Circuit's statutory interpretation). I consequently turn my inquiry to whether the common law of property rights encompasses the right to collect employer contributions.

The argument that these rights of collection are "property rights" stems from the contractual language of the agreements adopted by the employers. Employers who execute the Adoption Agreements, under which the Master Plan governs the provision of retirement benefits to their employees, agree that they are required to make contributions to the Master Trust on behalf of their employees. Article 8.02(a) of the Master Plan states that the "Employer shall make any contributions required under Article III of the Plan." Article 3.01–3.14 lays out the different schemes for employer contributions available to the Participating Plans. For example, the language in the Linskey Agreement stated that "the Employer Prevailing Wage Contributions shall be the hourly rate" for that employee's category or classification. The Secretary contends that once the governing documents obligate an employer to make wage contributions, the plan has the legal right and obligation to enforce that obligation as a chose in action.[3]

From a property rights perspective, a chose in action is the "right to bring an action to recover a debt, money, or thing." *Black's Law Dictionary* (8th ed. 2004); *see also* Restatement (First) of Property § 163 cmt. b (1936) (stating that a chose in action "is a future interest, and like all property interests, it is transferable"). A chose in action constitutes property. *Standard Oil Co. v. State of New Jersey,* 341 U.S. 428, 439, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). Similarly, under the law of trusts, trust property "may consist of such diverse rights as undivided interests, terms of years, contingent future interests, and choses in action ...." Restatement (Third) of Trusts § 40 cmt. b (2003); *see Luna,* 406 F.3d at 1200 n. 5. Under these ordinary notions of property rights, the Participating Plans hold an interest in the collection of the employers' contributions

---

3. The Supreme Court has noted that "trust documents cannot excuse trustees from their duties under ERISA," and "trust documents must generally be construed in light of ERISA's policies." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 568, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

to the Plans, which are contractually owed to the Plans.

PBS challenges the application of the property rights test by arguing that the governing documents of the Master Plan do not support including the right of contribution collection in the Plan's assets.[4] One version of this argument is that the governing documents explicitly exclude the right to collect employer contributions from the Master Plan's assets. According to PBS, the governing documents of the Master Plan determine the assets of the Master Plan. PBS contends that if the Trust Agreement expressly states that the Trustee has no duty to collect employer contributions, the chose in action is expressly excluded from the trust estate.

I find this argument unpersuasive for several reasons. First, except for the exculpatory clause the Plan documents do not support the Defendant's reading. The Trust Agreement states at Article 1.01 that plan assets include "all contributions and assets paid or delivered to it pursuant to all Plans established by all Employers." The Trust Agreement also states that "[a]ll legal right, title and interest in and to the assets in the Trust Fund shall at all times be vested exclusively in the Trustee." Assets include employer contributions, and the Trust Agreement vests in the Trustee all legal interests in employer contributions. As discussed above, a legal interest can include a chose in action as an "asset." Therefore a chose in action with respect to employer contributions is precisely within the terms of the Trust Agreement.

Second, if PBS were correct that this asset is excluded from the Master Trust, it would follow that the Master Plan does not in fact include the right to collect employer contributions. That outcome contradicts the provisions of the Master Plan as described by the Defendant who concedes that the provision relieving the trustee of collection responsibility "does not mean that the Trustee is precluded from pursuing a debt on behalf of a plan," and that the Master Trust Agreement "fully empowers the Trustee to do so." If the right to collect employer contributions has been excluded from the definition of plan assets, then it is difficult to understand how the Trustee would in fact have this right.

The Defendant also argues that the governing documents must unambiguously define delinquent employer contributions as a "plan asset." According to PBS, the express terms of the governing documents do not identify a legal or contractual claim to collect employer contributions as a plan asset. A plan acquires a beneficial interest in property if "the plan sponsor expresses an intent to grant such a beneficial interest or has acted or made representations sufficient to lead participants and beneficiaries of the plan to reasonably believe that such funds separately secure the promised benefits." *Kalda*, 481 F.3d at 647 (citing DOL AO No. 94–31A at *7).

PBS does not dispute that the governing documents of the Master Plan clearly identify a legal or contractual duty on the part of the employers to make contributions to their respective plans. As a consequence, the documents do not need to include an additional explicit statement that this duty gives rise to the plan's right to collect these contributions.

█ I conclude that under the ordinary notions of property rights, plan assets include the right to collect unpaid employer contributions. This view is supported by a

---

4. PBS also defends this provision as being not only common, but approved by the Internal Revenue Service. I do not discuss these factors except to say that industry practice and interpretations by the IRS are not relevant sources of statutory interpretation in this case.

set of appellate opinions. A Tenth Circuit case, *Luna*, 406 F.3d 1192, involved a collective bargaining agreement (CBA) whereby the employers (the Lunas) had agreed contractually to make regular contributions to the retirement plan. When the Lunas filed for bankruptcy, the DOL sought payment of the Lunas' unpaid employer contributions. *Id.* at 1197. This required the DOL to establish that the Lunas were fiduciaries for purposes of 11 U.S.C. § 523(a)(4) of the Bankruptcy Code and Section 3(21) of ERISA, 29 U.S.C. § 1002(21). *Luna*, 406 F.3d at 1197–98. Under Section 3(21)(A), this in turn required showing that the contractual right to collect unpaid employer contributions was a "plan asset." 29 U.S.C. § 1002(21)(A); *Luna*, 406 F.3d at 1198. The Tenth Circuit held that "[u]nder ordinary notions of property rights, although the plan did not own the contributions themselves, it did own a contractual right to collect them." *Id.* at 1200.

The Second Circuit reached a similar conclusion in *United States v. LaBarbara*, 129 F.3d 81 (2d Cir.1997). As in *Luna*, the employer was contractually obligated under a CBA to make regular contributions to an employee benefit plan. *Id.* at 83. The defendant, a union leader who negotiated the CBA, faced charges of theft from the employee retirement fund in violation of 29 U.S.C. § 664. *Id.* at 82–83. One of his defenses was that the amounts not paid to the plan were never assets of the plan. *Id.* at 88. The Second Circuit held that once wages were paid to employees, the employer's "contractual obligations" to make contributions to the ben-

efit plan became a "plan asset" within the meaning of ERISA. *Id.*[5]

The Defendant quarrels with reliance on these cases because they arise out of Taft–Hartley Funds governed by CBAs. Taft–Hartley Funds, of course, are welfare and benefit funds for union members that are jointly administered by employer-designated and union-designated trustees, pursuant to federal law. 29 U.S.C. § 186(c)(5)(B); *see Levy v. Local Union Number 810*, 20 F.3d 516, 517–18 (2d Cir. 1994) (describing the general framework of Taft–Hartley Funds). The CBA (between the unions and the employers) sets the employers' contribution rate. In contrast, a single-employer plan, such as one of the Participating Plans, has no board of trustees overseeing the fund's financial integrity. The employers, rather than the Trustee, are the plan administrators.

The key difference from the Defendant's perspective is that Taft–Hartley trust agreements typically provide expressly that the board of trustees is responsible for the collection of employer contributions. As a result, PBS argues, the cases cited by the Secretary cannot be taken out of their unique context.

The Defendant's Taft–Hartley distinction does not signify a relevant difference. The holdings of *Luna* and *LaBarbara* regarding the interpretation of "plan assets" do not rely upon their Taft–Hartley context. *Luna* involved the statutory interpretation of "plan assets," and did not turn to the statutory duties of Taft–Hartley trustees to govern that interpretation. *See Luna*, 406 F.3d at 1199. *LaBarbara*

---

**5.** Another case cited by the Plaintiff is *United States v. Jackson*, 524 F.3d 532 (4th Cir.2008), which held that employer contributions not yet paid to the benefit plans were "assets" for purposes of 18 U.S.C. § 664. *Id.* at 544. *Jackson* has since been vacated and remanded by the Supreme Court, *Jackson v. United States*, — U.S. ——, 129 S.Ct. 1307, 1307,

173 L.Ed.2d 575 (2009). The remand was made in recognition of the government's modification of its legal position that the "asset" under § 664 was not the unpaid contributions themselves, but rather the right to collect these contributions. Brief for the United States, No. 08–263, at 9–10, 2009 WL 133443.

based its evaluation of unpaid employer contributions on its view of the relevant contract. Once wages were paid to the employees, the employer had contractual obligations to the funds, which "constituted 'assets' of the Funds by any common definition." *LaBarbara,* 129 F.3d at 88. Using contractual obligations to determine an obligation's status as an asset is hardly unique to the Taft–Hartley context.

### c. Compliance with Section 403

■ Given my interpretation of the term "plan assets" in the statute, it appears that the Master Plan's provision eliminating Trustee responsibility for the collection of employer contributions does not comply with Section 403 of ERISA. ERISA states that "all assets of an employee benefit plan shall be held in trust by one or more trustees." 29 U.S.C. § 1103. The law of trusts tells us that the trustee's responsibilities include "collecting and protecting trust property." Restatement (Third) of Trusts § 76 (2007).

PBS's response is that a trustee's responsibilities are primarily defined not by ERISA or the common law of trusts, but by the terms of the trust agreement and the plan's other governing documents. For this contention, PBS cites *Justice v. Bankers Trust Co., Inc.,* 607 F.Supp. 527 (N.D.Ala.1985), which involved a trust agreement stating that "the Trustee shall be under no duty to enforce payment of any contribution and shall not be responsible for the adequacy of the Trust Fund to meet and discharge the liabilities of the plan." *Id.* at 534. The court in *Justice* found this provision to be permissible, holding that "as a general rule, [Section 404(a)(1) ] does not enlarge the basic scope of those duties as defined in the controlling documents." *Id.* at 533. *Justice,* however, is distinguishable because its threshold question involved interpretation of fiduciary duties under Section 404, not the interpretation of "plan assets" to be held in trust under Section 403.

The framework of ERISA depends on trustees who work to ensure that the retirement plan has the funds to perform the statute's objectives. *Central States,* 472 U.S. at 571–72, 105 S.Ct. 2833 ("ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries ...."). The trustee has certain expected responsibilities, including "to use reasonable diligence to discover the location of the trust property and to take control of it without unnecessary delay." *Id.* at 572, 105 S.Ct. 2833. Despite the strong language of *Central States,* however, it is important to note that *Central States* addressed only "the trustees' right to conduct this particular kind of audit program, not their duty to do so." *Id.* at 581, 105 S.Ct. 2833.

I join those courts which have found that Section 403 imposes not only a right, but also a duty, on trustees to monitor and collect employer contributions to ERISA funds. Because the Trustee under the Master Plan does not in fact have responsibility for collecting employer contributions, the Master Plan effectively states that the Trustee will not in fact hold this right in trust, contrary to the framework of Section 403.

### 2. *PBS's Fiduciary Status*

Having concluded that the Master Plan violates Section 403, the next step is whether PBS faces any fiduciary liability under Section 404 for failing to ensure that the Trustee is responsible for the collection of employer contributions to the Master Plan. Section 404 of ERISA sets forth the obligations of fiduciaries to protect the interests of plan beneficiaries. 29 U.S.C. § 1104(a)(1). Fiduciaries have a duty of

loyalty to plan beneficiaries, requiring them to act "for the exclusive purpose of: (I) providing benefits to participants; and (ii) defraying reasonable expenses of administering the plan." § 1104(a)(1)(A). Fiduciaries also have a duty of care, which requires them to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B). *See Central States,* 472 U.S. at 571, 105 S.Ct. 2833 (identifying the "standard of loyalty" and "standard of care" located in 29 U.S.C. § 1104(a)(1)). The precise issue before me depends on PBS's status as a fiduciary. In this connection, I am instructed by Justice Frankfurter's observation that "to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry to whom is he a fiduciary? What obligations does he owe as a fiduciary?" *Sec. and Exch. Comm'n v. Chenery Corp.,* 318 U.S. 80, 85–86, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

### a. The Functional Test

■ ERISA identifies two types of fiduciaries: named fiduciaries and functional fiduciaries. *Beddall v. State St. Bank and Trust Co.,* 137 F.3d 12, 18 (1st Cir.1998).

Named fiduciaries are defined either as individuals identified as such in the plan documents, or those who are identified as fiduciaries pursuant to a procedure specified in the plan. 29 U.S.C. § 1102(a)(2). PBS is neither.

A person is a functional fiduciary with respect to a plan:

> to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

§ 1002(21)(A).

■ Courts determine whether a person is a functional ERISA fiduciary based on whether the person "exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets." *Beddall,* 137 F.3d at 18. This functional test is based not on the identity of the person, but rather on "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). As a result, a person can be a fiduciary with respect to certain functions involving an ERISA plan, and not be a fiduciary with respect to other functions. *See Campbell v. BankBoston, N.A.,* 327 F.3d 1, 6–7 (1st Cir.2003) ("The ERISA fiduciary duty doctrine envisions that one entity will have fiduciary duty attach to some activities but not others ...."); *Beddall,* 137 F.3d at 22 (rejecting the notion that an ERISA fiduciary for one purpose therefore has a fiduciary obligation for another purpose when there is no nexus between the two); *Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.,* 941 F.2d 561, 569 (7th Cir.1991) ("[T]he obligation as a fiduciary pertains only to the discretion thus created. So although [a defendant] is a 'fiduciary,' its obligation is only to use its limited discretion in the interest of the beneficiaries.").

The parties dispute whether PBS exercised "discretionary authority." The Amended Complaint states that PBS has exercised discretionary authority or control with respect to the management and

administration of Participating Plans. In particular, the Amended Complaint lists a variety of the Defendant's decisionmaking capacities: to appoint and to remove the Trustee; to amend the Master Plan, Trust Agreement, and Adoption Agreement; to approve reasonable compensation for the Trustee; to compute, certify, and direct the Trustee with respect to benefit payments; to authorize disbursements from the Master Trust; and to interpret the Master Plan.

Not all of those tasks are involved in this case. I must identify those actions that give rise to the Amended Complaint, and evaluate whether those actions are made with the requisite discretionary authority, thereby giving rise to fiduciary liability.

b. Trustee Appointment and Removal

■ The Secretary argues that PBS's fiduciary status is based on its authority over Trustee appointment and removal. The Secretary observes that PBS's "discretionary authority" includes the power to appoint and to remove plan fiduciaries, and infers from this authority that PBS has a duty to ensure that the Trustee is responsible for monitoring and collecting employer contributions. The decision to appoint a Trustee who has no responsibility for collecting employer contributions, according to the Secretary, was a fiduciary act, and one for which the Secretary says the Defendant must face fiduciary liability.

The Secretary thus associates discretionary authority over Trustee appointment with a duty regarding the trustee's responsibility for employer contributions. To support this inference she cites *Liss v. Smith*, 991 F.Supp. 278 (S.D.N.Y.1998). There, Vincent Sombrotto, president of a local teamster union, was deemed a fiduciary by the court to the extent that Sombrotto had the power to appoint and to remove the trustees. *Id.* at 310. The issue was whether Sombrotto, based on

this power, could also be liable for the trustees' breaches of fiduciary duty. The court concluded that he could: "The power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance." *Id.* at 311.

The *Liss* conclusion is based on similar ideas expressed in case law and federal regulations. *See Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir.1996) (finding that the duty of appointment and removal carries with it a duty to monitor appropriately those that are subject to removal) (internal quotations omitted); *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir.1984) (concluding that the defendants, as fiduciaries responsible for selecting the plan administrators, also had a duty to monitor the administrators' actions); *Whitfield v. Tomasso*, 682 F.Supp. 1287, 1300, 1305 (E.D.N.Y.1988) (holding the defendant liable for trustees' fiduciary breaches where the defendant had the power of trustee appointment and removal). The Department of Labor's regulations address the issue of a fiduciary's ongoing responsibilities after appointing a trustee: "At reasonable intervals the performance of trustees and other fiduciaries should be reviewed ... to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75–8, at FR–17.

The argument that a duty to remove a trustee carries with it a concomitant duty to engage in oversight of a trustee is both persuasive and supported by case law. Less apparent, however, is whether a duty to engage in trustee oversight is really the issue in this case. *Liss* involved a trustee who violated his clearly established duties, a circumstance that the defendant had reason to know occurred. This case, by contrast, involves PBS's decision at the outset over how to define the Trustee's duties.

The conduct at issue, then, is not the Defendant's alleged failure to monitor the ongoing performance of the Trustee; rather it is the Defendant's own decision to define the Trustee's responsibilities in such a way that may run counter to its ERISA obligations. This has little to do with the power of appointment and removal; any newly appointed trustee, after all, could have its responsibilities regarding employer contributions defined in precisely the same way as it was for Reliance and RSGroup.

One alternative perspective is that the exculpatory provision regarding collection of employer contributions not only eliminates a responsibility of the Trustee (i.e., collection of contributions), but also eliminates a responsibility of the Plan Sponsor (oversight of the Trustee in this respect). In that sense, PBS might be acting in a fiduciary capacity when it creates a provision that limits Trustee responsibility because PBS thereby limits its own oversight responsibilities. But this is a semantic sleight of hand. The exculpatory provision does not involve lack of oversight in and of itself, but rather, is a structure for plan governance that has the effect of limiting PBS's oversight.

I have found no case that addresses whether under these circumstances, based on its power to remove the Trustee, PBS is acting in its fiduciary capacity and is therefore subject to fiduciary liability. Nor am I persuaded that the power to remove the Trustee is sufficiently tied to a decision regarding Trustee responsibilities such that PBS is acting as a fiduciary when it designs the plan structure in this way. I therefore conclude that PBS's fiduciary liability, if it exists, cannot be based on its power of Trustee appointment and removal.

### c. Amending the Master Plan

██ Of the Defendant's forms of authority identified in the Amended Complaint, it seems that the only one relevant to the Plaintiff's ERISA allegation is the authority to amend the Master Plan, Trust Agreement and Adoption Agreement. The Master Plan and Trust Agreement explicitly state that the Trustee is not responsible for monitoring and collecting employer contributions, and PBS has the authority to amend these documents to remove this provision.

The adoption, modification, or termination of an employee benefit plan, however, is not subject to ERISA fiduciary rules. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) ("In general, an employer's decision to amend a pension plan ... does not implicate the employer's fiduciary duties ...."); *Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (citing the rule that because a fiduciary's defined functions do not include plan design, amending an employee benefit plan is not subject to fiduciary review); *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (noting that plan sponsors do not violate their fiduciary duties when they amend an ERISA plan); *Campbell,* 327 F.3d at 6 ("The act of amending the terms of a plan is not one to which a fiduciary duty applies."). Therefore to the extent that the Secretary's allegation relies on PBS's power to alter the terms of the plan itself, it fails to allege a violation of PBS's fiduciary duties.

### 3. *Breach of Fiduciary Duties*

Having concluded that PBS was not acting in a fiduciary capacity with respect to the conduct alleged in this case, it is not necessary for me to discuss whether PBS breached its fiduciary duties under ERISA. I turn instead to the issue whether the provision is consistent with ERISA requirements for plan provisions

under Section 410, irrespective of PBS's status as a fiduciary.

## B. Violations of Section 410

■ The Secretary has alleged that the provision regarding employer contributions not only violates Section 403, but also Section 410 of ERISA, 29 U.S.C. § 1110. Section 410 contains an anti-exculpation provision: "[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). If a fiduciary "writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect." *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418 (9th Cir.1997). Because the provision in this case relieves the Trustee of responsibility for collecting employer contributions, which itself is a duty under ERISA, as discussed above, the Secretary argues that the provision should be void.

According to the Defendant, the Trustee always retained its power to pursue claims on behalf of the Plan, and was not precluded from pursuing debts, and therefore the provision does not contravene Section 410. Although it is true that the Trustee had the authority to pursue Plan debts, it was explicitly not responsible for doing so un-der the Plan's provisions. The provision permits the Trustee's authority, but precludes the Trustee's responsibility, for the collection of employer contributions. The statute, however, requires that plan assets be held in trust by trustees. 29 U.S.C. § 1103. The Master Plan contravenes Section 410 by determining ultimately that the right of collection will not be held in trust, thereby relieving the Trustee of its responsibilities under Section 403. I therefore conclude that the employer contribution provision is void as against public policy.[6]

## C. Statute of Limitations

■ In its Answer to the Amended Complaint, the Defendant asserted an affirmative defense that the Secretary's suit was time-barred. (Answer to Am. Compl. at 6.) Section 413 of ERISA prohibits a claim for ERISA violations that are brought "after the earlier of" the following:

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation; or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

---

6. *Levy v. Local Union Number 810*, 20 F.3d 516 (2d Cir.1994), is instructive on the general issue of limitations upon fiduciary duties. *Levy* involved an employee benefits plan whose terms limited the circumstances under which a local trustee could be removed (i.e., only by the union's executive board, and only for "malfeasance"), and precluded the union's international trustee from removing the local trustee in any circumstance whatsoever. *Id.* at 518. The Second Circuit held that this provision was inconsistent with the fiduciary obligations under Section 404(a)(1) of ERISA, which imposes on trustees strict duties of care and loyalty. 29 U.S.C. § 1104(a)(1)(A)-(B); *Levy*, 20 F.3d at 520. The trustee protections "completely insulate[d] the plan trustees from any and all oversight on behalf of the plan beneficiaries," and were therefore struck down. *Levy*, 20 F.3d at 520. *Levy* involved a provision that insulated a trustee from its duties under Section 404; this case involves a provision that insulates the Trustee from its duties under Section 403. The implications for Section 410 are, however, the same. The provisions relieving the Trustee from the obligation to collect employer contributions is against public policy and must be struck down.

29 U.S.C. § 1113. There cannot be "actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows 'essential facts of the transaction or conduct constituting the violation.'" *Edes v. Verizon Commc'ns, Inc.,* 417 F.3d 133, 142 (1st Cir.2005) (quoting *Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1086 (7th Cir.1992)).

Neither of the time limitations on pursuing this action has been violated. PBS became the Plan Sponsor in January 2005. PBS continues to engage in the conduct alleged by the Plaintiff, and therefore the six-year limitation under § 1113(1) does not apply here. With respect to the three-year limitation, the earliest date on which the DOL had actual knowledge of PBS's conduct could not have been earlier than January 1, 2005. This action was commenced on August 10, 2007, well within the three-year limitation under § 1113(2).

PBS raises the issue that the Secretary had knowledge that prior plan sponsors engaged in the same conduct, which according to PBS constitutes knowledge for purposes of § 1113(2), even if the current Defendant was not the plan sponsor at the time. The Defendant's view is that PBS is a "successor in interest" to Association, the prior plan sponsor. PBS provides no support for the contention that "actual knowledge" under § 1113(2) pertains only to a category of conduct, and not to PBS's conduct specifically. Nor does it support the contention that PBS is a successor in interest for purposes of statutes of limitations.

I am therefore left with the words of the statute, "breach or violation." The words "breach or violation" refer to the phrase found at the beginning of this Section of the statute: "No action may be commenced under this subchapter with respect to a fiduciary's *breach* of any responsibility, duty, or obligation under this part, or with respect to a *violation* of this part,

...." § 1113 (emphasis added). "Breach or violation" thus signifies breach of a fiduciary duty or violation of ERISA that has given rise to the Plaintiff's action. *See Brock v. Nellis,* 809 F.2d 753, 755 (11th Cir.1987) ("To charge the Secretary with actual knowledge of an ERISA violation, ... he must have had specific knowledge of the actual breach of duty upon which he sues."). The Secretary has not commenced an action with respect to the conduct of Associated Prevailing Wage Contractors, Inc. (the sponsor that preceded PBS); the Secretary's action involved the alleged breaches and violations of PBS.

## IV. REMEDY

The Secretary is entitled to seek an injunction or other form of equitable relief under Section 502(a)(5) of ERISA for provisions that violate ERISA's requirements. 29 U.S.C. § 1132(a)(5); *see Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (characterizing Section 502(a)(5) as a "catchall" providing a safety net that offers appropriate equitable relief for injuries caused by violations of ERISA requirements).

The Secretary seeks in particular an Order that requires PBS to modify the Master Plan and Trust Agreement in a way that ensures that a fiduciary is responsible for monitoring and collecting employer contributions, and that requires the fiduciary authorized under Section 403 to be independent of the employers who have adopted the Master Plan. I find that equitable relief should be granted to the extent that a Judgment should issue declaring that the exculpatory provisions relieving the Trustee of the obligation to collect employer contributions from the Master Plan and the Trust Agreement are in violation of ERISA Section 403 and are void as against public policy under Section 410,

and requiring the Defendant to strike such provisions from the plans it sponsors.

## V. CODA

It bears emphasizing that the Secretary has sought to do through this litigation what she has been unwilling to do under her rule-making authority: effectively require all ERISA master plans and trust agreements to recognize the trustees' obligation to collect employer contributions. Her initiative is achieved here by a judicial act striking down as against public policy exculpatory provisions which attempt to relieve the Trustee of that obligation. For the reasons set forth above, I find the Secretary is entitled to such a judicial order in this case. But the implications of this order will require nuanced development. How rapidly must the Trustee move to commence recovery efforts? When may the Trustee exercise discretion to abandon claims presenting the prospect of limited recovery? These are examples of questions which will require answers and guidance to insure that the recovery of employer contributions does not become so costly or burdensome that current or potential Trustees will have powerful incentives to withdraw their services or make them inordinately or prohibitively expensive. Providing a proper balance through rule-making is now an obligation of the Secretary, lest prevailing on this case be a Pyrrhic victory in the battle to provide serviceable and affordable pension plan administration for those employed by relatively small employers.

## VI. CONCLUSION

For the reasons stated more fully above, I GRANT the Plaintiff's Motion for Summary Judgment with respect to the claim that the Master Plan is in violation of Section 410, but I DENY the Plaintiff's Motion with respect to the claim that PBS is violating its fiduciary duties under Section 404. (Docket No. 18.) I DENY the Defendant's Cross Motion for Summary Judgment. (Docket No. 20.)